PEATROSS, J.
|, Plaintiff, Antonio Wells, Sr. (“Mr. Wells”), individually and on behalf of his minor children, Antonio Wells, Jr. and Amber Wells, filed suit in 2002 against Defendants, William C. Norris (“Mr. Norris”) and XYZ Insurance Company, for wrong *1167 ful death and injuries sustained as the result of a house fire. After trial of the case in March 2010, the trial judge took the matter under advisement. Then, in August 2010, without assigning written reasons for judgment, the trial judge ruled in favor of Plaintiffs, awarding damages in the amount of $207,572.79.
Mr. Norris and XYZ Insurance Company appeal from the trial judge’s ruling in favor of Plaintiffs. For the reasons set forth herein, we affirm.

FACTS

In December 2000, Mr. Wells leased from Mr. Norris a house located on Julia Street in Bossier City, Louisiana. Mr. Wells lived there with his wife,[1] Amanda Wells, and their three children: (1) Amber Wells (born January 18, 2000), (2) Antonio Wells, Jr. (born December 30, 1998) and (3) Arquisia Wells (born November 11, 1997).
On July 1, 2001, between 11:00 a.m. and 12:00 noon, the house caught on fire. The Bossier City Fire Department (“BCFD”) responded and was ultimately able to extinguish the fire. Nevertheless, the fire resulted in the death of Arquisia Wells and injuries to both Amber Wells and Antonio Wells, Jr.
According to Mr. Wells, when he and his family moved into the house, several of the electrical outlets in the walls were not operational. l2Extension cords had been plugged into the functioning wall outlets throughout the home to power the areas in the home that did not have correctly functioning wall outlets. For instance, in the living room, there was a light hanging from the ceiling which was connected to an extension cord which ran down the wall and plugged into a functioning wall outlet.
BCFD Chief David Gray investigated the scene of the fire and discovered that the fuse box in the home contained mostly 30 amp fuses. According to Chief Gray, the use of 30 amp fuses in a residential circuit would be “indicative of an overload” because residential circuits typically use 20 amp fuses. Chief Gray further observed that a penny had been placed below one of the 20 amp fuses, presumably to prevent the system from tripping. Chief Gray also found that there were several fuses lying on the floor by the fuse box indicating that someone had changed the fuses. Chief Gray opined that the altered condition of the fuse box and the discarded fuses likely meant there was a problem with fuses blowing in the home.
Chief Gray determined that the fire appeared to have started where an additional air conditioner had been placed in the home and powered by an extension cord. He theorized that there was an overload by the air conditioner powered by the extension cord and the altered fuse box would not let the system trip. As a result, the system began heating up until a fire ignited.
As previously mentioned, Mr. Wells filed suit in the matter in June 2002, claiming that Mr. Norris was strictly liable for the damages sustained |sby him and his family due to the fire. Trial of the matter was held in March 2010 and the trial judge ruled in favor of Mr. Wells. The trial judge awarded $207,572.79 in damages to Mr. Wells, individually and on behalf of his minor children, to be paid by Mr. Norris and XYZ Insurance Company. The total damage award was divided into the following sums: $150,000 for the wrongful death of Arquisia Wells; $50,000 for injuries sustained by Amber Wells; $3,684.06 for the medical bills of Arquisia and Amber Wells; and $3,888.73 for the funeral expenses of Arquisia Wells. The trial judge did not *1168 assign oral or written reasons for his ruling in favor of Mr. Wells.
This appeal ensued.

DISCUSSION

According to Mr. Norris, the trial judge erred in ruling that he was strictly liable under La. C.C. art. 2696, infra, for the injuries and death sustained by the Wells family because Mr. Wells waived the warranty against vices and defects imposed by Article 2696 when he signed the lease agreement. The lease agreement between Mr. Norris and Mr. Wells contained the following clause:
14. Maintenance and Repair
A. Tenant will, at Tenant’s sole expense, keep and maintain the House and appurtenances in good and sanitary condition and repair during the term of this Lease. In particular, Tenant shall keep the fixtures in the House in good order and repair; keep the furnace clean; and keep the walks free from dirt and debris. Tenant shall, at Tenant’s sole expense, make all required repairs to the plumbing, range, oven heating apparatus, electric and gas fixtures, other mechanical devices and systems, floors, ceilings and walls whenever damage to such items shall have | resulted from Tenant’s misuse, waste or neglect, or that of Tenant’s family, agent or visitor.
Relying primarily on La. R.S. 9:3221, infra, Mr. Norris asserts that the above language in the lease obligating Mr. Wells to “maintain the house in good repair” amounts to an unequivocal waiver of any warranty imposed on the lessor (Mr. Norris) by La. C.C. art. 2696.
In response, Mr. Wells contends that a defect in the home, i.e., the altered fuse box, presented an unreasonable risk of harm, ultimately resulting in injuries to two of his children and in the death of another. Mr. Wells argues that, under La. C.C. art. 2696, Mr. Norris is strictly liable for the injuries to Mr. Wells’ family and, further, that there was no waiver in the lease relieving Mr. Norris of the warranty imposed by Article 2696. Specifically, Mr. Wells argues that the clause in the lease wherein he agrees to maintain the house in good repair does not amount to or contain clear or unambiguous language resulting in an express waiver of warranty in favor of Mr. Norris under La. R.S. 9:3221.
When appellate review is based upon an independent review and examination of the lease contract on its face, the manifest error rule does not apply. Johnson v. Ledoux, 42,090 (La.App.2d Cir.5/16/07), 957 So.2d 911, writ denied, 07-1482 (La.10/5/07), 964 So.2d 946; Lawrence v. Terral Seed, Inc., 35,019 (La.App.2d Cir.9/26/01), 796 So.2d 115, writ denied, 01-3134 (La.2/1/02), 808 So.2d 341. In such cases, appellate review of a question of law is simply whether the trial court was legally correct or legally incorrect. Johnson v. Ledoux, supra; Lawrence v. Terral Seed, Inc., supra.
|fiThe Louisiana Civil Code provides the following:

La. C.C. art. 2696

The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose. This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.

La. C.C. art. 2697

The warranty provided in the preceding Article also encompasses vices or defects that are not known to the lessor. However, if the lessee knows of such vices or defects and fails to notify the lessor, the lessee’s recovery for breach of warranty may be reduced accordingly.

*1169
La. C.C. art. 2698

In a residential lease, the warranty provided in the preceding Articles applies to all persons who reside in the premises in accordance with the lease.

La. C.C. art. 2699

The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee. Nevertheless, a waiver of warranty is ineffective:
(1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
(2) To the extent it is contrary to the provisions of Article 2004; or
(3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.
Additionally, La. R.S. 9:3221 provides:
Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
|nTo prevail on a strict liability claim under La. C.C. art. 2696, the plaintiff must prove that the defendant had custody of the thing causing the injury; that it contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused plaintiffs injury. Shuff v. Brookshire Grocery Co., 45,109 (La.App.2d Cir.3/3/10), 32 So.3d 1030; Davis v. Diamond Shamrock Refining and Marketing Co., 34,309 (La.App.2d Cir.12/6/00), 774 So.2d 1076. The lessor’s liability is based on his status as landlord, not his personal fault; therefore, his lack of knowledge regarding the defect is inconsequential. Bertini v. Scaife, 04-1229 (La.App.3d Cir.2/16/05), 895 So.2d 619. If the lessee knows of such vices or defects and fails to notify the lessor, however, the lessee’s recovery for breach of warranty may be reduced accordingly. La. C.C. art. 2697. The warranty under Article 2696 may be waived, but only by clear and unambiguous language brought to the attention of the lessee. La. C.C. art. 2699.
La. R.S. 9:3221 operates as an express statutory exception to La. C.C. art. 2699 where the lessee assumes responsibility for the condition of leased premises. Stuckey v. Riverstone Residential SC, LP, 08-1770 (La.App.1st Cir.8/5/09), 21 So.3d 970, writ denied, 09-2328 (La.1/8/10), 24 So.3d 873. Where the language of a provision transferring delictual liability under La. R.S. 9:3221 is clear and'unambiguous, the law does not require that the provision be brought to the lessee’s attention or explained to him. Greely v. OAG Properties, LLC, 44,240 (La.App.2d Cir.5/13/09), 12 So.3d 490, writ denied, 09-1282 (La.9/25/09), 18 So.3d 77; Stuckey v. Riverstone Residential SC, LP, supra. Thus, La. C.C. art. 2699’s requirement that a waiver of the lessor’s warranty against vices or defects be brought to the attention of the lessee does not apply to a provision transferring responsibility for purposes of La. R.S. 9:3221. Stuckey v. Riverstone Residential SC, LP, supra.
In the case sub judice, Paragraph 14 of the lease signed by the parties provided that Mr. Wells was obligated to “keep and maintain the House and appurtenances in good and sanitary condition and repair during the term of this Lease.” Mr. Norris argues that this language was clear and unequivocal and that “any warranty impos *1170 ing strict liability on the defendant was waived.” We are not persuaded by this argument.
Mr. Wells’ agreement to “maintain the house in good repair” does not equate to his assumption of responsibility for the condition of the premises leased as contemplated by La. R.S. 9:3221. Additionally, further review of the entire lease indicates that no language existed anywhere therein amounting to a clear and unambiguous waiver of the warranty against vices and defects imposed by La. C.C. art. 2696. Accordingly, we find that Mr. Norris is strictly liable for Mr. Wells’ injuries and that the trial judge did not err in rendering judgment in favor of Mr. Wells.
In light of our disposition of appellant’s first and second assignments of error, we pretermit any discussion of the remaining assignments of error set forth in his brief.

^CONCLUSION

For the forgoing reasons, the judgment of the trial court in favor of Antonio Wells, Sr., individually and on behalf of his minor children, Antonio Wells, Jr. and Amber Wells, is affirmed. Costs of this appeal are assessed to William C. Norris and XYZ Insurance Company.
AFFIRMED.

. Mr. and Ms. Wells are now divorced.