GUIDRY, J.
*393 This is an appeal of a summary judgment dismissing the injury claims of a lessee against his lessor with prejudice. After reviewing the evidence offered in connection with the summary judgment, along with the applicable law, we affirm.
FACTS AND PROCEDURAL HISTORY
Dewayne Montgomery filed a petition for damages against his lessor, Garry Lewis (doing business as Garry Lewis Properties), asserting claims of negligence, breach of contract, breach of implied warranty of habitability, and negligent infliction of emotional distress premised on allegations that he began experiencing various health problems due to the apartment he leased being contaminated with mold and rat feces.[1] Mr. Lewis answered the petition generally denying liability for any of the claims asserted. Mr. Lewis later filed a motion for summary judgment, contending that Mr. Montgomery would be unable to prove causation as it related to his claims of negligence and that he could not prove knowledge of a pre-existing defect so as to overcome his assumption of liability for the condition of the leased premises under the lease agreement. The trial court held a hearing on the motion for summary judgment on August 28, 2017, following which it granted the motion and dismissed all of Mr. Montgomery's claims against Mr. Lewis with prejudice. Mr. Montgomery appeals that judgment, which was signed on September 21, 2017.
ASSIGNMENTS OF ERROR
On appeal, Mr. Montgomery asserts the following as the errors committed by the trial court in granting summary judgment:
1. The trial court abused its discretion in granting summary judgment when there remained genuine issues of material fact which precluded the entry of summary judgment in Appellee's favor.
2. The trial court erred by granting summary judgment prior to the end of full discovery.
DISCUSSION
In this appeal, Mr. Montgomery first contends that there are genuine issues of material fact that should have precluded the trial court from rendering summary judgment in favor of Mr. Lewis. In particular, he contends that the medical records he introduced "were certainly sufficient enough to raise a triable issue of fact."
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Bice v. Home Depot U.S.A., Inc., 16-0447, p. 3 (La. App. 1st Cir. 12/22/16), 210 So.3d 315, 318. The current summary judgment procedure provides that after adequate discovery, a motion for summary judgment is properly granted if *394 the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1) (emphasis added). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Biggs v. Cancienne, 12-0187, p. 5 (La. App. 1st Cir. 9/21/12), 111 So.3d 6, 9.
In this case, Mr. Montgomery is claiming damages due to the apartment he leased being contaminated with mold. In leasing a thing, a lessor warrants that the thing is free of vices or defects that prevent the thing from being used for the purpose for which it was leased. That warranty extends to vices or defects that arise after delivery of the thing that are not attributable to the fault of the lessee and even to vices or defects that are not known to the lessor. La. C.C. arts. 2696 and 2697.
To prevail on a strict liability claim under La. C.C. art. 2696, the plaintiff must prove: 1) the defendant had custody of the thing causing the injury; 2) it contained a defect; and 3) the defect caused the plaintiff's injury. Stone v. Lakes of Chateau North, L.L.C., 16-529, p. 8 (La. App. 5th Cir. 12/14/16), 208 So.3d 1053, 1059, writ denied, 17-0087 (La. 2/24/17), 216 So.3d 59. As the lessor's liability under La. C.C. art. 2696 is based on his status as landlord, and not his personal fault, his lack of knowledge regarding the defect is inconsequential. Wells v. Norris, 46,458, p. 6 (La. App. 2 Cir. 8/10/11, 6), 71 So.3d 1165, 1169, writ denied, 11-1949 (La. 11/18/11), 75 So.3d 465.
For purposes of La. C.C. art. 2696, a defect is defined as a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Stone, 16-529 at p. 8, 208 So.3d at 1059. In this case, the defect complained of by Mr. Montgomery is the presence of mold in the leased apartment. However, in order to prove that an injury was caused by mold, a plaintiff must establish causation on five different levels: (i) the presence of mold, (ii) the cause of the mold and the relationship of that cause to a specific defendant, (iii) actual exposure to the mold, (iv) the exposure was a dose sufficient to cause health effects (general causation), and (v) a sufficient causative link between the alleged health problems and the specific type of mold found (specific causation). Watters v. Department of Social Services, 08-0977, pp. 16-17 (La. App. 4th Cir. 6/17/09), 15 So.3d 1128, 1142-43, writs denied, 09-1651, 09-1638 (La. 10/30/09), 21 So. 3d 291, 293. General causation refers to proving exposure in a dose sufficient to cause health effects, while specific causation refers to proving a sufficient causative link between the alleged health problems and the specific *395 type of mold. Watters, 08-0977 at p. 17 n.18, 15 So.3d at 1143 n.18. The test for determining the causal relationship between the tortious conduct and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by the incident. Watters, 08-0977 at pp. 31-32, 15 So.3d at 1152.
In support of his motion for summary judgment, Mr. Lewis included the affidavit of his property manager, Jenny Cullen, wherein she acknowledged that on March 7, 2016, Mr. Montgomery complained of mold in the apartment, but she stated that she did not find any mold when she subsequently inspected the premises. She stated that Mr. Montgomery only stayed one night in the apartment, on March 4, 2016, which she knew because she received a certified letter from Mr. Montgomery stating such and because she observed that no one appeared to be living in the apartment when she inspected it on March 7, 2016. A copy of the letter from Mr. Montgomery, dated March 9, 2016, was also submitted by Mr. Lewis.
Mr. Lewis and Mr. Montgomery both submitted copies of reports for Mr. Montgomery's medical treatment following his stay in the apartment.[2] The earliest medical report is for a March 10, 2016 visit to "Lake After Hours," a walk-in clinic for minor injuries and illnesses. In that report, Mr. Montgomery chiefly complained of shortness of breath starting two days prior. The report contradictorily states that Mr. Montgomery denied coughing, but wanted to know if the "black mold" in his apartment was causing his congestion and cough. He was diagnosed with hypertension and an acute upper respiratory infection. Reports of later visits to Dr. Brian Gremillion, an internal medicine doctor, on March 15 and April 19, 2016, were also submitted and reveal a diagnosis of "asthmatic bronchitis, mild intermittent, uncomplicated" and ringworm. A final report for an April 22, 2016 visit with Dr. Gremillion reveals that Mr. Montgomery was treated for dermatitis and "mild intermittent asthma without complication." None of the medical evidence submitted relates Mr. Montgomery's complaints or diagnoses to exposure to mold.
In addition to the medical reports, Mr. Montgomery also submitted the affidavit of a certified residential mold inspector, Odell Wilmer, Sr., and a lab report from EMSL Analytical, Inc. In his affidavit, Mr. Wilmer stated that he was hired by Mr. Montgomery to inspect the leased premises,[3] and upon entering the premises, he "immediately smelled a 'musty odor.' " He then recounts having found mold in a downstairs air conditioning cabinet, on the *396 wall of an upstairs air conditioning closet, in several supply air vents, and in duct boxes. Mr. Wilmer took "tape samples" of the mold he found, which he submitted to a lab for testing. The lab report from EMSL Analytical, addressed to the attention of Mr. Wilmer, reports that the samples contained several spore types, with the most significant readings being for Aspergillus/Penicillium and Cladosporium.
In his affidavit, Mr. Wilmer opined that "[a]s a LSLBC Certified Mold Inspector, my 20year [sic] experience has afforded me extensive knowledge about Black Mold and the harm it can cause Human Beings." He said he advised Mr. Montgomery that " 'YES,' any mold can cause health problems if exposed long enough ." (Emphasis added.) He further discussed certain findings that he said the "Institute of Medicine" made in 2004, linking indoor exposure to black mold to respiratory, mental, neurological, and circulatory problems, but as observed by the trial court,[4] Mr. Wilmer failed to provide a copy of a report or any reference to where those findings may have been reported.
In light of the applicable law, the evidence presented by Mr. Montgomery was insufficient to create a genuine issue of material fact as to the causation element of his claim. The evidence submitted indicates that mold was present in the apartment Mr. Montgomery leased and that Mr. Montgomery experienced symptoms consistent with health ailments caused by mold, but proof that mold is present in an indoor environment does not equate to proof of actual exposure to mold. Watters, 08-0977 at p. 21, 15 So.3d at 1145. There is nothing in the medical records submitted that relates Mr. Montgomery's symptoms to mold.
The only summary judgment evidence that links the symptoms experienced by Mr. Montgomery to the mold in the apartment is his responses to interrogatories,[5] wherein he states that he began to experience abnormal breathing upon leaving the apartment and that the "issues/ailments" he experienced after his first and only night sleeping in the apartment "have not ceased as [he is] still experiencing breathing problems and skin rashes." In Harper v. Grand Casino Coushatta, 06-0322, pp. 1-2 (La. App. 3d Cir. 9/27/06), 940 So.2d 911, 912-13, it was undisputed that mold was present in the moisture-damaged walls of the casino where the plaintiff was employed for several years. It was also established that the work the plaintiff primarily did was repairing those walls. Nevertheless, it was determined that the mold in the walls did not cause the plaintiff's health complaints, because the plaintiff remained symptomatic after he stopped working at the casino, which fact was medically opined to be "inconsistent with exposure to mold." Harper, 06-0322 at pp. 3-4, 940 So.2d at 914-15. Hence, we find no error in the trial court's finding that the evidence submitted by Mr. Montgomery did not create a genuine issue of material fact as to causation.
Additionally, in seeking summary judgment, Mr. Lewis pointed out that in the lease agreement signed by Mr. Montgomery, under the section labeled "LIABILITY," it states:
Lessee has inspected premises and assumes responsibility for their condition.
*397 Lessor shall not be liable for injury caused by any defect therein to the Lessee or anyone on the premises who derives his right to be thereon from the Lessee, unless the Lessor knew or should have known of the defect or had received notice thereof and failed to promptly remedy it within a reasonable time. Should Lessee fail to promptly so notify Lessor in writing of any such defects, Lessee will become responsible for damage caused by leaks in the roof, by bursting pipes by freezing or otherwise, or any vices or defect of the leased property, or the consequences thereof.
Louisiana Revised Statute 9:3221 provides:
Notwithstanding the provisions of Louisiana Civil Code Article 2699,[6 ] the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Louisiana Revised Statute 9:3221 is a statutory exception to the strict liability of La. C.C. art 2696 and is not subject to the provisions of La. C.C. art. 2699. Stuckey v. Riverstone Residential SC, LP, 08-1770, p. 8 (La. App. 1st Cir. 8/5/09), 21 So.3d 970, 974, writ denied, 09-2328 (La. 1/8/10), 24 So.3d 873.
Mr. Lewis submitted the affidavits of Ms. Cullen, his property manager, and David Ferrell, his maintenance manager, to establish that he did not know, nor did he have reason to know, there was mold in the apartment leased to Mr. Montgomery. In his affidavit, Mr. Ferrell stated that "Garry Lewis Properties did not have knowledge of the existence of mold in the apartment rented by Mr. Montgomery." He further stated that Garry Lewis Properties did not have knowledge of an "unresolved rat problem," as the prior tenant's complaint about rats in December 2015, "was handled promptly and [he] received no further complaints of that nature from the prior tenant." Other than noting that she inspected the apartment and "could not find any" mold after Mr. Montgomery complained to her in person on March 7, 2016, Ms. Cullen's statements regarding the presence of mold and rats in the apartment mirrored those of Mr. Ferrell. In opposition, Mr. Montgomery submitted a copy of the maintenance records for the apartment, which showed that from June 2013 to March 2016, there were nine different complaints of water leaks in various areas of the apartment, but the maintenance records make no mention of any complaints of mold.
In Stuckey, a summary judgment case, similar evidence of a history of water leaks was presented in opposition to a motion for summary judgment filed by the lessor. In finding that the affidavit of the specialist who had inspected the leased premises for mold did not create a genuine issue of *398 material fact, the court noted that while the specialist "made reference to the reported prior water leaks in his affidavit, [he] did not attribute the presence of mold to those leaks." Stuckey, 08-1770 at p. 13, 21 So.3d at 977. Similarly, in the matter before us in this summary judgment, there is no evidence directly linking the presence of mold in the apartment to the prior reports of water leaks. Hence, we again conclude that the evidence submitted by Mr. Montgomery fails to create a genuine issue of material fact in this case.
In his second assignment of error, Mr. Montgomery contends that summary judgment was improperly granted before discovery had ended. The requirement that a summary judgment should be considered only after "adequate discovery" has been construed to mean that there is no absolute right to delay action on a summary judgment motion until discovery is complete; rather, the requirement is only that parties have a fair opportunity to carry out discovery and to present their claim. Unless a party shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. Welch v. East Baton Rouge Parish Metro. Council, 10-1532, p. 6 (La. App. 1st Cir. 3/25/11), 64 So.3d 249, 254.
Although the trial court issued two case management schedules during the proceedings below, a discovery deadline was never imposed. Notably, at the time he filed his motion for summary judgment, the record reveals that Mr. Lewis was still actively conducting discovery, having issued several deposition notices; he was further awaiting a hearing on his motion to compel.[7] Other than a set of interrogatories and a request for admissions that Mr. Montgomery served on Mr. Lewis around the time he filed his petition for damages in 2016, there is nothing in the record indicating any additional or outstanding discovery sought by Mr. Montgomery.
In opposing the motion for summary judgment, Mr. Montgomery argued that the evidence he was submitting in opposition was sufficient to establish genuine issues of material fact to defeat the motion. And while he noted that the depositions scheduled by Mr. Lewis were pending and that "discovery remains open" in his opposition, he did not assert, as he does on appeal, that he "was deprived of the opportunity to bring forth additional evidence which would have clearly demonstrated all necessary elements to support the claims in his petition."
At the hearing on the motion for summary judgment, Mr. Montgomery likewise only argued that the evidence he submitted created genuine issues of material fact, with no mention of needing additional time to conduct further discovery. Moreover, the record does not reveal that Mr. Montgomery requested a continuance to conduct such discovery. In Diversified Marine Services, Inc. v. Jewel Marine. Inc., 16-0617, p. 12 (La. App. 1st Cir. 6/2/17), 222 So.3d 1008, 1017, this court affirmed a summary judgment rendered while discovery was still ongoing, based on the plaintiff's failure to object or otherwise move for a continuance of the hearing. Therefore, considering that Mr. Montgomery did not raise the objection of inadequate discovery in the proceedings below and that he failed to seek a continuance of the hearing in order to conduct additional discovery, we find no merit in this assignment of error.
*399 CONCLUSION
Having thoroughly scrutinized the evidence and considered the applicable law, we affirm the September 21, 2017 summary judgment of the trial court. All costs of this appeal are cast to the appellant, Dewayne Montgomery.
AFFIRMED.
Pettigrew, J. concurs.

Mr. Montgomery initially filed suit, in proper person, on behalf of himself, his children, and Kasey Jones (whom he referred to in the record as his "common-law wife") against Garry Lewis Properties, on March 29, 2016. However, as Mr. Montgomery is not a licensed attorney, and Garry Lewis Properties is not a legal entity, but simply a trade name under which Mr. Lewis operates his business, Mr. Montgomery later amended his petition to only name himself as plaintiff and Mr. Lewis as defendant.

Generally, a party may not utilize unsworn and unverified documents as summary judgment evidence. Thomas v. Comfort Center of Monroe. LA. Inc., 10-0494, p. 13 (La. App. 1st Cir. 10/29/10), 48 So.3d 1228, 1237. Article 966(A)(4) states that "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Nevertheless, it has been recognized that although Articles 966 and 967 do not permit a party to use unsworn and unverified documents as summary judgment evidence, if both parties offer identical copies of documents, indicating that there is agreement between them as to their authenticity, the court may accept them. Boland v. W. Feliciana Parish Police Jury, 03-1297, p. 6 (La. App. 1st Cir. 6/25/04), 878 So.2d 808, 814, writ denied, 04-2286 (La. 11/24/04), 888 So.2d 231. Moreover, the current version of Article 966 further provides that the court "shall consider any documents to which no objection is made." La. C.C.P. art. 966(D)(2).

Mr. Wilmer did not state the date he inspected the premises in his affidavit, but he indicates that he completed his inspection report on April 1, 2016.

In its reasons, the trial court observed "[t]he fact is, while that gentleman cites certain studies that were supposedly done, he does not attach those studies, and even if he did, he is not a medical expert and could not testify as to medical causation."

No testimony from Mr. Montgomery, in the form of an affidavit or deposition, was submitted by Mr. Montgomery.

Louisiana Civil Code article 2699 states:
The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee.
Nevertheless, a waiver of warranty is ineffective:
(1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
(2) To the extent it is contrary to the provisions of Article 2004; or
(3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.

Mr. Lewis's motion for summary judgment was fax filed on July 11, 2017, and the hearing on the motion to compel was held on July 17, 2017.