JUDE G. GRAVOIS, Judge.
| ^Defendant, Milton Gagnon, has appealed a trial court judgment dismissing his petition to annul a default judgment that was rendered against him. For the reasons that follow, we reverse the trial court judgment dismissing Mr. Gagnon’s petition to annul the default judgment rendered against him, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

On January 20, 2011, plaintiff, First Bank and Trust (“First Bank”), filed suit against Bayou Land and Marine Contractors, Inc. (“Bayou Land”) on a promissory note owned by First Bank that had been executed by Bayou Land. Also named as individual defendants in the suit were Milton Gagnon and Michael Thompson[1], both of whom had personally guaranteed the *1150 Bayou Land promissory note. The petition alleged that the promissory note had not been paid in accordance with its | oterms and conditions, and accordingly was in default. Mr. Gagnon was served with the petition on February 8, 2011, both individually and as agent for service of process for Bayou Land.
On February 14, 2011, Mr. Gagnon, in proper person, filed a motion for an extension of time within which to answer First Bank’s petition, appearing both individually and on behalf of Bayou Land and Mr. Thompson. On February 16, 2011, the trial court granted the defendants a 30-day extension of time within which to answer the petition, as prayed for in the motion.
On or about April 5, 2011, First Bank filed a motion for a preliminary default against Bayou Land and Mr. Gagnon, alleging that they had failed to appear or file an answer to First Bank’s petition after having been properly served with the petition. A preliminary judgment of default was rendered against Bayou Land and Mr. Gagnon on April 5, 2011.
On May 19, 2011, First Bank filed a motion to confirm the preliminary judgment of default against Bayou Land and Mr. Gagnon. On May 23, 2011, the trial court signed a judgment confirming the preliminary judgment of default. This judgment, rendered against Bayou Land and Mr. Gagnon in solido, was in the amount of $78,463.42, plus interest accrued through January 6, 2011 in the amount of $36,615.50, plus interest from January 7, 2011 until paid at the rate of 6.00% per annum, plus late charges, 15% attorney’s fees and all costs.[2] This judgment was designated as a final judgment pursuant to La. C.C.P. art. 1915(B)(1). Notice of the signing of this judgment was mailed to Mr. Gagnon on May 26, 2011, both individually and as agent for service of process for Bayou Land.
On August 25, 2011, Mr. Gagnon, through counsel, filed a petition to annul the default judgment that had been rendered against him. This petition alleged that “[djefendant was waiting to receive notice as to whether his Motion for Extension |4of Time to answer the demand in case number 697-157 was granted or denied, but instead received notice of a default judgment,” and that “[b]ut for the Clerk’s failure to notify defendant of its ruling on the Motion for Extension of Time to file an answer, defendant would have been informed of the allowable time delays set by the Court in this matter, and answered within those time delays.” Mr. Gagnon’s petition alleged that due to the Clerk’s failure to serve him with notice of the court’s ruling on his motion, all proceedings subsequent thereto against him are absolutely null. The petition also alleged that the note in question had been paid prior to February 2007, and accordingly, the entire demand by First Bank was “invalid and absolutely null from the moment of its inception,” and that the making of a demand on a note that had already been extinguished constituted fraud and fraudulent misrepresentation under La. C.C.P. art. 2004 A. The petition further alleged that the action to enforce the note was barred because payments on the note had not been made in excess of five years and that the default judgment in effect revived the note which was prescribed, and thus was grounds for annulment under La. C.C.P. art. 2004. Finally, the petition alleged that counsel appearing *1151 therein for Mr. Gagnon had represented him in other proceedings by First Bank against Mr. Gagnon, and that First Bank’s counsel’s failure to notify Mr. Gagnon’s counsel of its intent to move for a default judgment constituted ill practice on the part of First Bank.
A hearing on Mr. Gagnon’s petition to annul was held on September 30, 2011. At the hearing, counsel for Mr. Gagnon reiterated the allegations of the petition, namely that the default judgment should be annulled because: (1) Mr. Gagnon never got served with or had notice that the trial court acted on his motion for an extension of time; (2) the amount of the note had already been paid in another proceeding; and (3) counsel represented Mr. Gag-non in the other proceedings, which made him counsel of record in this proceeding, and the failure Uof First Bank’s counsel to notify him of its intent to take a default judgment against his client constituted fraud and ill practice. Counsel for First Bank argued that the petition to annul should be dismissed because the petition alleged no grounds for annulment. Further, he denied that Mr. Gagnon’s counsel was counsel of record in this case at the time the default judgment was taken and argued that counsel represented Mr. Gag-non in other proceedings involving other entities in which Mr. Gagnon guaranteed notes on behalf of the other entities; thus, he had no obligation to notify counsel for Mr. Gagnon of his intent to file a motion for a default judgment in this proceeding. Counsel for First Bank further noted that Mr. Gagnon had represented himself in other proceedings for three to four years. Counsel for Mr. Gagnon responded in reply that because he was negotiating on behalf of Mr. Gagnon with First Bank for “all notes” owed by Mr. Gagnon, he was counsel of record in this case as well. The trial court stated that the arguments made by Mr. Gagnon’s attorney were defenses on the original suit and that First Bank had done nothing to prevent Mr. Gagnon from answering the original petition. The trial court concluded that grounds to annul the default judgment had not been demonstrated and denied the petition to annul. This timely appeal followed.

ASSIGNMENTS OF ERROR

In his appeal, Mr. Gagnon has raised two assignments of error, to-wit:
1. The trial court prematurely confirmed, the default judgment in violation of LA-CCP. Art. 1702 A.
2. The trial court erred by failing to annul a default judgment procured by ill practices, and further failed to recognize and acknowledge the absolute mdlity of the invalid default judgment it rendered in contravention of LA-CCP 2001 A and/or 2002.A(2), in addition to Louisiana Supreme Court mandate.

\r,DISCUSSION OF ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Mr. Gagnon argues that he had made an appearance of record in this case by filing a motion for an extension of time, and pursuant to La. C.C.P. art. 1702 A, notice of the preliminary judgment of default had to be sent to him by certified mail by counsel for First Bank. He contends that because the record is void of any such mailing notifying him of the entry of the preliminary judgment of default against him, the default judgment should not have been confirmed and therefore is an absolute nullity.
First Bank responds that this argument was not presented in the trial court and therefore cannot be raised for the first time on appeal.
Our review of the record indicates that this argument was not in fact *1152 specifically raised in the petition to annul or at the hearing on the petition. The long-standing rule of law is that appellate courts will not consider issues raised for the first.time on appeal, which are not pleaded in the court below, and which the trial court has not addressed. Council of City of New Orleans v. Washington, 09-1067 (La.5/29/09), 9 So.3d 854, 856. However, La. C.C.P. art. 2164 gives the appellate court authority to render any judgment which is just, legal, and proper upon the record on appeal.[3] Our review of the record of this case on appeal indicates that, as set forth below, the trial court committed an error of law in confirming the judgment of default against Mr. Gag-non, and thus, this Court has authority to address this issue despite Mr. Gagnon’s failure to specifically raise this issue in the trial court.
La. C.C.P. art. 2002 A(2) provides that a final judgment shall be annulled if it is rendered against a person whom a valid judgment by default has not been taken. La. C.C.P. art. 1702 A provides, in pertinent part, as follows:
j7When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to coun- , sel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
Here, the record indicates that Mr. Gag-non filed a motion for an extension of time within which to file an answer. Mr. Gag-non’s filing of such a motion constituted an appearance of record by him in this case. Bethley v. Nat’l Auto. Ins. Co., 02-1572 (La.App. 4 Cir. 2/12/03), 840 So.2d 608.[4] Thus, pursuant to La. C.C.P. art. 1702 A, the trial court should not have allowed First Bank to confirm the default judgment against Mr. Gagnon without first having received proof from First Bank that it had first sent him notice of the date of the entry of the preliminary judgment of default against him by certified mail, since he had made an appearance of record in the case. The failure of First Bank to send Mr. Gagnon such notice and the failure of the trial court to confirm that the procedures set forth in La. C.C.P. art. 1702 A were complied with prior to rendering the default judgment against Mr. Gagnon are sufficient grounds to nullify the default judgment rendered against him. Id. Accordingly, the trial court erred in dismissing Mr. Gagnon’s petition to annul the default judgment rendered against him. As such, we must reverse the September 30, 2011 trial court judgment dismissing Mr. Gagnon’s petition to annul the default judgment rendered against *1153 him, and remand the matter to the trial court for further proceedings consistent with this opinion.
This finding on appellant’s first assignment of error renders a discussion of appellant’s remaining assignment of error moot.

\ CONCLUSION

For the foregoing reasons, we reverse the September BO, 2011 trial court judgment dismissing Mr. Gagnon’s petition to annul the default judgment rendered against him, and remand the matter to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

. Appellee states in brief that Mr. Thompson has not been served because his whereabouts are unknown.

. This judgment further recognized First Bank’s security interest in and to all accounts receivable and an extractor belonging to Bayou Land, as had been prayed for in the petition.

. We note that official comment (a) to Article 2164 provides that "[t]he purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court.below.”

. In Bethley, the Court held that "[t]he defendant's filing the motion for extension of time constituted an appearance of record in the case, and the plaintiff should not have proceeded to confirm the default on 2 November 2001 without sending the defendant notice of the date of the entry of the judgment of default by certified mail. Further, the trial court should not have confirmed the default judgment without evidence that the plaintiff had sent the defendant such notice. The failure of the plaintiff and the trial court to follow the procedures set forth in La. C.C.P. art. 1702 requires the granting of a new trial. Consequently, the judgments of 2 November 2001 and 7 November 2002 are invalid.” 840 So.2d at 610.