GRAVOIS, J.

JjINTRODUCTION

Plaintiff/appellant, David Pillow, appeals the trial court’s June 8, 2015 judgment that granted summary judgment in favor of defendant/appellee, Roymar Limited Partnership (“Roymar”), and dismissed Mr. Pillow’s suit against Roymar. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On November 15, 2003, Jefferson Parish (“the Parish”) began leasing from Roymar an office building it owned located at 711 Second Street, Gretna, Louisiana (“the building”). Mr. Pillow worked as a probation coordinator for the Jefferson Parish Drug Court. His office was located on the second floor of the building. On August 27, 2007, while ascending the stairs to his office, Mr. Pillow allegedly fell and injured himself.[1]
On August 27, 2008, Mr. Pillow filed suit against Roymar and its insurer[2] for personal injuries he allegedly sustained as a result of his fall. In the petition, Mr. Pillow alleged that he slipped and fell on the stairs causing permanent injury to his body as a result of Roymar’s failure to inspect and. repair the property, failure to repair a loose handrail, and “permitting a dangerous condition to exist on the stairs namely that the stairs were unreasonably slippery after having actual and/or constructive notice of the unreasonably hazardous condition of its property.” Roymar answered the petition claiming that the accident in question was not due to its fault or negligence, but rather was caused in whole or in part through the fault, negligence, or want of care of Mr. Pillow and the Jefferson Parish Drug Court.
On March 1, 2013, Roymar filed a motion for summary judgment seeking dismissal of Mr. Pillow’s suit against Roymar. In its motion, Roymar argued that | ¡.under its lease agreement with the Parish, the Parish contractually assumed Roymar’s legal responsibilities for damages arising from the leased premises, pursuant to La. R.S. 9:3221. Mr. Pillow did not file an opposition to the motion for summary judgment until November 13, 2013, the day of the hearing on the motion.[3] During the hearing on the motion, the trial court deferred ruling on whether to accept into evidence the memorandum and exhibits submitted by Mr. Pillow with his opposition, pending Roymar’s opportunity to review the memorandum and exhibits. On November 18, 2013, Roymar filed an opposition and reply memorandum in support of its motion for summary judgment, submitting arguments regarding the delay in obtaining evidence and Mr. Pillow’s attempt to broaden the scope of the factual *351 circumstances regarding his accident with his opposition and attached exhibits. On June 8, 2015, the trial court, with incorporated extensive reasons, rendered judgment granting Roymar’s motion for summary judgment, dismissing Mr. Pillow’s suit against Roymar at his costs.. This timely appeal followed.
On appeal, Mr. Pillow asserts the following assignments of error, to-wit:
1. The trial court erred in not drawing reasonable inferences- from underlying facts in a manner favoring the non-mover/appellant.
2. The trial court erred in finding that the appellant’s summary judgment affidavit conflicted with his deposition testimony.
3. The trial court erred in striking the plaintiffs other corroborating evidence of the slippery condition of the stairway steps which included the defendant’s admission that the stairway steps were slick and the occurrence of a prior accident' caused by the slippery condition of stairway steps.
4. The trial court erred by excluding from consideration the other probable causes contributing to the plaintiffs accident which his expert witnesses’ reports discussed in their reports by which the plaintiff did not express in his deposition testimony.
5. The trial court erred by finding the defendant’s self-serving affidavit was credible in light of all the evidence.
|s6. The trial court erred in finding the defendant did not have actual and constructive notice of its building stairways loose handrail and slippery steps.
7. The trial court erred in holding the lease clause in lines 63-69 was enforceable pursuant to .La. R.S. 9:3221 thereby disregarding La. C.C. arts. 2696 and 2697. ■■ .
8. The trial court erred by not finding the appellee’s failure to apply for a building permit, occupancy permit, and. usage permit- as required by Gretna’s municipal ordinance was a statutory violation and constituted a genuine -issue of material fact precluding the grant of appellee’s summary judgment motion.
9. The trial court erred in granting 'defendant’s summary ■ judgment motion when the defendant did not plead in its answer the affirmative defense of its lease clause pursuant to La. R.S. 9:3221.
10.The trial court erred by not drawing from the evidence that the stairway handrail had probably been repaired which the appellee denied.

LAW AND ANALYSIS

Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions', together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2).[4] The party bringing the motion bears the'burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La; C.C.P. art. *352 966(G)(2). Thereafter, if the adverse party-fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id. .
On appeal, our review of summary judgments is de novo under the same criteria that govern the district court’s consideration of whether summary .judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. Thus, appellate courts ask the, same questions the trial court does in determining whether ..summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled -to judgment as a matter of law. Breaux v. Fresh Start Properties, L.L.C., 11-262 (La.App. 5 Cir. 11/29/11), 78 So.3d 849, 852.
Contradicting affidavit[5]
In support, of its motion for summary judgment, Roymar attached a copy of Mr. Pillow’s deposition. Mr. Pillow included as exhibits, to his opposition to the motion, which as noted above was filed on the day of the hearing on the motion, a copy of his own affidavit created a number of years after his deposition was taken, as well as affidavits, with attachments, of his experts, Dr. Neil Hall and Dr. Gary Nelson. In ruling on the motion for summary judgment, the trial court found’ that Mr. Pillow’s post-depositión affidavit contradicted his deposition testimony about what caused his fall. Accordingly, the trial court struck portions of Mr. Pillow’s affidavit and those pf his .experts referring to slippery steps and other alleged stairwell defects[6] as causes of Mr. Pillow’s fall and only considered the alleged loose handrail as the defect that caused Mr. Pillow’s accident. On appeal, Mr. Pillow argues that the trial court erred in finding that his summary judgment affidavit contradicted his deposition testimony, and that by striking the facts regarding other “probablé causes” of the accident from his affidavit and the affidavits of his expert witnesses, the trial court did not consider the genuine issues |fiof material fact which were in dispute and would have precluded summary judgment.
At his deposition taken on September 29, 2009, Mr. Pillow explained that his office was located on the second floor of the building, and that he would traverse the stairs “[sjometimes five, sometimes twenty” times a day. When asked to describe how the accident occurred, Mr. Pil *353 low stated that he was going up the stairs to his office, holding on to both the handrail on the left and the bannister on the right. He was watching the steps in front of him.[7] He got up “maybe six, seven, eight steps” when the left handrail pushed into the wall and set him off balance. The handrail moved about an inch and a half or two inches.. When the handrail moved, he lost his balance, -falling toward the left against the wall, and then landing on the bottom landing. Later in his deposition, Mr. Pillow was asked about the type of shoes he was wearing at the time of his accident. He also described the steps as being a varnished wood. However, Mr. Pillow never stated that the steps were slippery, nor did he ever state that slippery steps contributed to his fall. Specifically, during his deposition, when asked by counsel if he had any other, problems with the stairs, other than the railing, Mr. Pillow responded, “No.”
In support of his opposition to the motion for summary judgment, Mr. Pillow attached his affidavit dated October 9, 2013, in which he attested that his deposition testimony was incomplete as to what caused the fall. He stated the following regarding his fall:
While walking up the 711 building stairway, he twisted his ankle when his right foot slipped. His foot slipped because the. step was slippery. He was off balance fi’om slipping but his ankle pain caused him to feel he was falling. Before his right foot slipped, his left hand had been on the wood handrail for balance and his right hand on the banister for support. When he lost his balance and started to fall backwards to his left, he tried to change his left hand position so his hand could, firmly grip the handrail. His left hand was in contact with the handrail as he was reversing his - hand and falling backward. His | ñleft hand had not gripped the handrail firmly. He thinks if the handrail had not moved, he could have held onto it and stopped his fall and preventing his injury.
Mr. Billow blamed the incompleteness of his deposition testimony -on the fact that he “was distracted by acute back pain that day despite . taking extra pain medication.” He further attested that he “thinks the additional narcotic pain medication, a larger dose then [sic] he took up to that time (but within the prescribed dosage), affected his mental ability to comprehend the significance of what was asked and the importance of providing a complete response.”
Mr. Pillow also included with his opposition, the affidavits, with attachments, of his experts, Dr. Hall and Dr. Nelson. Dr. Hall found that the handrail height and the handrail brackets were non-compliant with code requirements and thus were unsafe conditions known to contribute to pedestrian falls. Dr. Nelson found that the primary unsafe - conditions and/or . causative factors for causing this type of fall were (a) the existence of wood stairway treads known to be a relatively slippery material for use as stair treads (accentuated by tread sag), (b) the absence .of a high slip-resistant tread leading edge treatment, (c) the presence of a loose handrail that failed to provide a stable handhold to prevent’the fall that occurred to Mr. Pillow, or otherwise prevent him from recovering from the progress of his fall to the landing below, and (d) the presence of hardware attaching the handrail to the wall in this matter that has the potential of ripping one’s hand *354 from the handrail as one’s hand slides along such handrail in an attempt to use the handrail to recover from a fall in progress.
The time limits set forth in Louisiana District Court Rule 9.9 are applicable to the summary judgment procedure. That rule requires that the party adverse to the motion for summary judgment must file its opposition at least eight days prior to the hearing on the motion. Untimely filed papers may be excluded by the trial court. Worthmore Capital, LLC v. Milco 2003-Univ., LLC, 12-166 (La.App. 5 Cir. 9/11/12), 101 So.3d 478, 480-81. In Guillory v. Chapman, 10-1370 (La.9/24/10), 44 So.3d 272, the Supreme Court found that the trial court, which refused to consider a late-filed affidavit, did not abuse its discretion in “choos[ingj to follow the mandatory language of La. C-.C.P. art. 966(B)(2), which requires a party opposing the motion for summary judgment to serve opposing affidavits and any memorandum in support thereof ‘at least eight days prior to the date of the hearing.’ ” Upon review, we find that the trial court did not abuse its discretion in choosing to follow the mandatory language of La. C.C.P. art. 966(B)(2), and thus we find no error in the trial court’s striking of portions of Mr. Pillow’s affidavit and those of his expert’s referring to slippery steps and other alleged stairwell defects and only considering the alleged loose handrail.
Notice of defect[8]
Under Louisiana law, the owner/lessor of a building is generally liable for the condition of the leased premises. Allstate Insurance Company v. Veninata, 06-1641 (La.App. 4 Cir. 11/7/07), 971 So.2d 420, 423, writ denied, 08-0067 (La.3/7/08), 977 So.2d 918. However, the Louisiana legislature enacted an exception to this rule, which enables the lessee to assume responsibility for the condition of the premises in the lease contract. La. R.S. 9:3221; Brown v. Conn. Gen. Life Ins. Co., 00-0229 (La.App. 4 Cir. 3/07/01), 793 So.2d 211, 213, writ denied, 01-2867 (La.1/11/02), 807 So.2d 238. Specifically, La. R.S. 9:3221 provides:
Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee ^assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In the present case, Roymar and the Parish entered into a lease agreement on *355 November 15, 2003, which • remained in effect at the time of.the alleged.accident.[9] The lease agreement contained the following clause:
Lessee assumes responsibility for the condition of the premises and the Lessor will not be responsible for damage caused by leaks in the roof, by bursting pipes, by freezing or otherwise, or any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within a reasonable time after having received written notice from the Lessee of such defects and the damages caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
Thus, pursuant to La. R.S. 9:3221 and the lease agreement, the Parish assumed responsibility for any alleged' defects in the property, unless Roymar knew or should have known of the defect or had received notice of the defect and failed to remedy it within a reasonable time. In its motion for summary judgment, Roymar contends that there is an absolute absence of factual support for Mr. Pillow’s burden of establishing that Roymar knew or should have known about the alleged defective handrail, or any other alleged defects in the stairwell.
In support of its motion for summary judgment, Roymar attached Mr. Pillow’s deposition testimony and the affidavit of Royce Ehret, a general and limited partner of Roymar. As previously discussed, Mr. Pillow testified at his deposition that his fall was due solely to the defective handrail that set .him off balance causing him to fall. Mr. Pillow further testified that the only person he complained to about the railing was his boss, Belinda Constant, the administrator |9of the Drug Court. Furthermore, he did not know if Ms. Constant ever followed up on his complaints or relayed the information .to anyone else.
In Mr. Ehret’s affidavit, he attested that as managing partner of Roymar, he had personal knowledge and/or access to knowledge of communication from the Parish regarding any complaints it had about the subject property. According to Mr. Ehret, prior to the date of Mr.'’Pillow’s accident, Roymar received no communication from the Parish or from any other source, concerning any defect, problem, vice, or damage- existing in the stairwell of the subject property. In particular, Mr. Ehret attested that Roymar received no communication from the Parish or from any other source, concerning any loose wall railings in the stairwell of the leased premises. Mr. Ehret further attested that Roymar had no knowledge of any loose wall railings in the stairwell of the leased premises on or before August 27, 2007. Finally, Mr. Ehret attested that' during the term of the lease, including on August 27, 2007, Roymar did not have custody of the leased premises.
On appeal, Mr. Pillow argues that Mr. Ehret’s affidavit was self-serving and contradictory. He argues that Mr. Ehret’s affidavit contradicted his deposition testimony about whether he remembered if the handrail was loose. Also, he argues that Mr. Ehret’s statement in his affidavit in *356 which he states that Roymar did not have custody of the leased premises is contradicted by his deposition testimony that he would inspect and -make repairs -in the building.
In Mr. Ehret’s deposition, which was attached to Mr. Pillow’s opposition to the motion for summary judgment, he testified that prior to and át the time of the alleged accident, if complaints were made about the building, he, as the managing partner, would have received them. He stated that from 2004-2007, the only |incomplaints he ever received regarding the building were for an original punch list,[10] an issue with the sewer, and a request that he paint the ceiling of the bathroom. In- the years 2004, 2005, 2006, and 2007, Mr. Ehret stated that he would go to the building “maybe twice a year.” He testified that he did not conduct any formal inspections of the building, but he would look around whenever he was called over there to do anything. He stated that he did use the stairs when he was in the building, but he could not remember if he put his hands on the handrail when he used the stairs. He testified that he. never noticed that the handrail was loose, and that if he had known that the handrail was loose or that people were, slipping on the steps, he would have done something to fix it. He testified that he had no personal knowledge of any of the alleged defects.
Upon review, we do not find the affidavit of Mr. Ehret to be self-serving or contradictory, In both his affidavit and in his deposition testimony, Mr. Ehret stated that he had no personal knowledge of the loose handrail- Further, we do not find that Mr. Ehret’s deposition testimony that he went to the building “maybe twice a year” when called upon to fix specific things proves contradictory to the statement in1 his affidavit that- he did not have custody of the building. Finally, considering Mr. Pillow’s deposition and Mr. Eh-ret’s affidavit, we find that Roymar met its burden of proving an absence of factual support for' Mr. Pillow’s burden of establishing that Roymar knew or should have known about the alleged defective handrail. -
Because Roymar met its initial burden, the burden then shifted to Mr. Pillow, the nonmoving party, to produce factual support to establish, that he will be able to satisfy his evidentiary burden of proof at trial' that Roymar knew or should have known about the defective handrail.
[nUpon review, we find that Mr. Pillow failed to produce factual support to establish his burden of proving that Roy-mar knew about the loose handrail. Again, Mr. Pillow only admitted to ever complaining about the defective handrail to his supervisor. He provided absolutely no evidence that his supervisor ever informed Roymar about the loose handrail. He even admitted in his affidavit that his supervisor, Ms. Constant, was very busy, and that “he had reason to believe [Ms.] Constant, would simply not have time to prepare a written complaint about the ¡slippery steps and loose handrail movement.” He further stated that he “even can understand how even a competent administrator or her assistant might forget about a verbal complaint.”. He further provided no factual support that Mr. Ehret knew about the loose handrail. He states in his affidavit that he saw Mr. Ehret in the building more than one or two times a year between 2004 and 2007. However, we find that Mr. Pillow simply seeing Mr. Ehret in *357 the building is clearly not enough to support his burden of proving that Mr, Ehret knew, about the loose handrail.[11]
Mr. r Pillow also argues that the trial court erred in not inferring that because Mr. Ehret’s admitted that he performed “2 informal inspections each year,” Mr. Ehret “should havé known” about the loose handrail. We find no merit to this argument. Again, Mr. Pillow failed to produce factual support to establish his burden of proving that Roymar should have known about the loose handrail, or any other alleged defects in the stairwell. The Fourth Circuit in Chau v. Takee Outee, Inc., 97-1166 (La. App. 4 Cir. 2/11/98), 707 So.2d 495, 498, turned to the recognized purpose of La. R.S. 9:8221 in resolving the meaning of the phrase “should have known.” The court recognized that the legislative purpose behind the adoption of La, R.S. 9:3221 was “to relieve the owner of some of the burdens imposed upon him by law in cases where he had given dominion or control of his [ ^premises to a tenant under a lease.” Id. The court found that the phrase “should have known ..:' should not be construed to impose expansive burdens upon the owner lessor,” and that .imposing such a duty to inspect would “all but completely deny [the co-owner] the relief granted to her by La. R.S. 9:3221.” Id. Thus, Mr. Ehret did not have a duty to inspect the leased property. Though Mr. Pillow has provided Mr. Ehret’s deposition in which he testifies that he did visit the property “maybe twice .a year,” he testified that these visits were not formal inspections; rather, he would just “look around,” We find that this evidence does not rise to evidence creating a genuine issue of material fact on the issue of whether Roymar should have known of the presence of the loose handrail, the defect of which Mr. Pillow complains, or for that matter, any other alleged defects in the stairwell. See Stuckey v. Riverstone Residential SC, LP, 08-1770 (La.App. 1 Cir. 8/05/09), 21 So.3d 970, writ denied, 09-2328 (La.1/8/10), 24 So.3d 873. ...
We further find no merit to Mr. Pillow’s argument that Mr. Ehret’s visits to the leased premises twice a year “to inspect and repair' anything that needed to be repaired” nullified the • application of the leasé clause shifting liability of the lease to the Parish. Mr. Pillow provided no support for this argument. Also, the statute itself allows for the lessor to take action when given notice of defects; however, as we have established, no notice was given to Roymar in this instance.
Mr. Pillow also argues that the trial court should have inferred that Roymar knew that its building required expensive repairs and that it deliberately breached its duty to comply with Gretna’s Building Code. We find no merit to this argument. Mr. Pillow provided no evidence that Roy-mar “knew its building required expensive repairs.”
Finally, we find no error in the trial court “not drawing from the evidence that the stairway handrail had been repaired following the accident.” In Mr. 11sEhret’s deposition, he attested that no subsequent repairs were made to the handrail.
Considering the foregoing, we find that the trial court properly determined that Roymar successfully pointed out an absence of factual support for Mr. Pillow’s *358 case and thus was entitled to summary-judgment.
Failure to plead affirmative defense[12]
Finally, Mr. Pillow argues that the trial court erred in enforcing La. R.S. 9:3221 because Roymar did not plead La. R.S. 9:3221 as an affirmative defense in its Answer. This is the first time Mr. Pillow has raised this argument. The long-standing rule of law is appellate courts will not consider issues raised for the first time on appeal, which the party did not plead in the court below and the trial court did not have the opportunity to address. First Bank & Trust v. Bayou Land & Marine Contrs., 12-295 (La.App. 5 Cir. 10/30/12), 103 So.3d 1148, 1152. Thus, this assignment of error will not be considered.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s granting of Roymar’s motion for summary judgment and the dismissal of Mr. Pillow’s suit against Roymar.

AFFIRMED

. Mr. Pillow's petition for damages states that the accident occurred while he was walking down the stairs; however, at his deposition, Mr. Pillow stated that the accident occurred while he was walking up the steps.

. Mr. Pillow named "ABC Insurance Company” as the insurer in his petition; however, the Answer states that Allstate Insurance Company insured Roymar.

.The record contains no transcript of the November 13, 2013 hearing on the motion for summary judgment. This Court attempted to supplement the record with a copy of the transcript of the hearing, but was informed by the 24th Judicial District Court that the recording of the hearing could not be located.

. The citations to La. C.C.P. art. 966 in this opinion correspond to the subparagraph designations in effect at the time of the hearing on Roymar's motion for summary judgment.

. Under this heading, we address the following assignments of error (numbered in accordance with Mr. Pillow’s brief), to-wit:
1. The trial-court erred in-not drawing reasonable inferences from underlying facts in a manner favoring the hon-mover/appellant.
2. The trial court erred in finding the appellant's summary judgment affidavit conflict- , ed with his deposition testimony.
3. The trial court erred in striking the plaintiff’s other corroborating evidence of the slippery condition of the stairway steps which included the defendant’s admission that the stairway steps were slick and the occurrence of a prior accident caused by the slippery condition of stairway steps.
4.The trial court erred by excluding from consideration the other probable causes contributing to the plaintiff's accident which his expert witnesses' reports discussed in their reports by which the plaintiff did not express in his deposition testimony.

. In its reasons for judgment, the trial court stated that since Mr. Pillow testified in his deposition that handrail movement was his only problem with the stairs, the court would not go into the issues brought by Dr. Hall pertaining to the respective heights of the handrail and bannister, the non-compliant handrail brackets, nor the nonuniform height of one of the step risers.

. Mr. Pillow testified at his' deposition that due to a previous right knee replacement, he would always go up the steps one step at a time at a steady pace, and he would always hold the railing.

. Under this heading, we address the following assignments of error (numbered in accordance with Mr. Pillow's brief), to-wit:
5. The trial court erred by finding the defendant’s self-serving affidavit was credible in light of all the evidence.
6. The trial court erred in finding the defendant did not have actual and constructive notice of its building stairways loose handrail and slippery steps.
7. The trial court erred in holding the lease clause in lines 63-69 was enforceable pursuant to La. R.S. 9:3221 thereby disregarding La. C.C. arts. 2696 and 2697.
8.The trial court erred by not finding the appellee’s failure to apply for a building permit, occupancy permit, and usage permit as required by Gretna’s municipal ordinance was a statutory violation and constituted a genuine issue of material fact precluding the grant of appellee’s summary judgment motion.
10. The trial court erred by not drawing from the evidence that the stairway handrail had probably been repaired which the appellee denied.

. The record reflects that the original lease was for a term of three years, with an option to renew for a fourth year. A “renewal of lease agreement” was signed on September 28, 2006 extending the lease from November 15, 2006 until May 14, 2007. The lease was again renewed for another six months beginning on May 17, 2007 and ending November 17, 2007.

. Prior to the Parish’s signing the lease for the building, the parties created a punch list of things that needed to be fixed. According to Mr, Ehret’s testimony, the handrail was not part of that list.

. In support of his opposition to the Motion, Mr, Pillow also included the affidavit of Heather Leonard, who attested to slipping and falling down the same steps on April 20, 2006 because "the step was slippery.” Because she attributes her fall to a slippery step, and not the loose handrail, this affidavit does not support Mr, Pillow’s. , burden of proving that Mr. Ehret knew about the loose handrail.

. Under this heading, we address the following. assignment of error (numbered in accordance with Mr. Pillow’s brief), to-wit:
9. The trial court erred in granting defendant’s summary judgment motion when the defendant did not plead in its answer the affirmative defense of its lease clause pursuant to La. R.S. 9:3221.