LILJEBERG, J.
| iDefendants, Lakes of Chateau North, L.L.C. (the “Lakes”) and Liberty Surplus Insurance Company, filed a supervisory writ application seeking review of the trial court’s August 29, 2016 judgment denying their motion for summary judgment. In accordance with the requirements set forth in La. C.C.P. Art. 966(H), this Court assigned the matter for briefing and oral argument. For the following reasons, we reverse the trial court’s judgment denying defendants’ motion for summary judgment, grant defendants’ summary judgment motion and dismiss plaintiff Gail Stone’s claims against defendants with prejudice.
FACTS AND PROCEDURAL HISTORY
This matter involves a slip and fall accident which occurred on January 14, 2014, at an apartment complex, Lakes of Chateau South, owned by the Lakes in Ken-ner, Louisiana. The material facts are undisputed. On that day, a winter storm caused the area to experience snow, ice *1055 and sleet. Plaintiff, Gail Stone, alleges that she sustained injuries to her shoulder when she slipped and fell on ice on an exterior stairway as she proceeded to her apartment on the second floor. Ms. Stone alleges that defendants are liable for her injuries because the Lakes knew of the icy conditions on the stairwell, but permitted an unreasonably dangerous condition to remain unattended. In their writ application, defendants contend the Lakes posted signs warning tenants of the icy conditions, the icy conditions were open and obvious and the Lakes had no further duty to warn or guard against ice on the stairwell in this matter.
The apartment complex has 248 apartments in 21 separate two and three-story buildings. On the morning of the accident, Ms. Stone left her second-story apartment to go to work around 6:15 a.m. It was raining and sleeting outside at that time. Ms. Stone testified that she saw ice starting to form outside as she was leaving for work. Ms. Stone is a neonatal nurse at Ochsner Hospital in Kenner and |2on the day of the accident, she worked a twelve-hour shift. During that time, Ms. Stone learned other employees were concerned icy conditions would prevent nurses from arriving for the night shift, and some nurses were trying to leave early due to the weather conditions.
Ms. Stone completed her shift and drove home around 9:00 p.m., arrived in the parking lot and exited her vehicle. She walked very slowly towards her apartment building because the parking lot was wet and icy. As she approached her building, she saw a sign posted on the entrance which contained an advisory which warned tenants to be careful due to the ice. Ms. Stone testified at her deposition that she did not hold onto the handrail as she walked up the steps to her apartment on the second floor. Ms. Stone successfully ascended the first set of stairs to the landing between the first and second floor. She alleges that she then slipped on a patch of ice as she attempted to step onto the first step of the next set of stairs, fell on her shoulder and sustained a serious injury.
After falling, Ms. Stone stood up and held onto the railing as she carefully ascended the remaining stairs leading to her apartment. Ms. Stone could not recall if she saw ice on any other steps, but testified that she felt ice on the stairs. She also stated that the stairway was dimly lit at the time of her accident, but did not recall seeing any inoperable or broken lights.
On June 2, 2014, Ms. Stone filed a petition for damages alleging her injuries were due to the fault and negligence of the Lakes, including the failure to inspect the premises, failure to provide safe conditions on the premises in accordance with La. C.C. Art. 660,[1] the failure to warn of the dangerous condition, the failure to |sclear the stairways of ice, the failure to properly inspect the stairwells for slippery substances and the failure to properly light the stairwell.
Defendants filed a motion for summary judgment asking the trial court to dismiss Ms. Stone’s claims because the Lakes owed no duty to Ms. Stone under the *1056 circumstances at issue. Based on her own testimony, Ms. Stone was aware of the ice and freezing conditions in the area, she walked very slowly through the parking lot due to ice, and she read the sign at the stairwell entrance warning of the icy com ditions. Defendants argued these undisputed facts established that the icy conditions were open and obvious. Defendants also argued that the presence of ice on the stairs did not create an unreasonably dangerous condition.
In addition to Ms. Stone’s deposition testimony, defendants provided an affidavit from David Sanderson, Vice-President of the Lakes’ parent company, Favrot & Shane Companies, Inc. Mr. Sanderson reported that Ms. Stone was the only person to report a slip and fall due to the ice, and there were no similar reported slip and falls due to ice in the ten years prior to the accident. Mr. Sanderson also noted that the stairwell leading to Ms. Stone’s apartment was illuminated by a double bulb fixture, the lights were inspected on a daily basis and there were no reports of broken lights around the date of the accident. Mr. Sanderson also explained that the apartment complex underwent a maintenance audit within six months prior to the accident and no defects or irregularities existed with respect to the lighting in the stairwell. In addition, neither Ms. Stone nor any other resident reported any slip and fall incidents due to inadequate lighting.
Defendants also attached deposition testimony from the Lakes’ supervising maintenance technician on duty at the time of the accident, Duane Guillot. Mr. Guillot testified that on the morning of the accident, he was in Ms. Stone’s building to complete some repair work when he observed ice on the landing. He immediately reported the situation to the apartment manager, who prepared signs Lin plastic covers to warn residents of the ice. Mr. Guillot taped the signs in all of the stairwells in every building in the complex. Mr. Guillot then went to the store and purchased bags of play sand to spread on the areas where he saw ice. He did not scrape off any of the ice. Mr. Guillot testified that he worked until the Lakes closed their office around noon or 1:00 p.m. due to the bad weather.
In her opposition brief, Ms. Stone argued the ice on the stairs created an unreasonable risk of harm and was not open and obvious, because the ice was clear and the lighting was insufficient for her to see the ice on the stairs. Ms. Stone argued that the issue of whether a condition is open and obvious is a question of fact that is not appropriate for summary judgment. She also argued that the Lakes breached its duty to her because the complex management and maintenance personnel left the complex around noon and there was no one to clear sidewalks and staircases for the tenants during the storm. The trial court held a hearing on the summary judgment motion on August 10, 2016. Following the hearing, the trial court denied defendants’ summary judgment motion based on its finding that the issue of whether the ice on the step was an open and obvious condition was a question of fact to be determined by the trier of fact and therefore, not a proper issue to be determined on summary judgment.
In their writ application, defendants first contend the trial court erred by failing to find that under the circumstances at issue in this matter, the Lakes owed no further duty to Ms. Stone to warn and/or guard against the ice on the stairwell. They also argue that the trial court ignored current Louisiana Supreme Court decisions which have clarified that the issue of whether a condition presents an unreasonable risk of harm can be determined on summary *1057 judgment when warranted under the particular circumstances of the case.
In response, Ms. Stone raised the same arguments asserted in her underlying opposition to the summary judgment motion. In addition, in her supplemental 1 .-.brief filed after this Court assigned the matter for briefing pursuant to La. C.C.P. Art. 966(H), Ms. Stone argues for the first time that defendants are strictly liable for her injuries, pursuant to La. C.C. Arts. 2696 and 2697, under which a landlord warrants to a tenant that the premises are free from vices and defects.
LAW AND DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La. 1991); Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. Summary judgment will be granted if the motion, memorandum and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966(A)(3). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. Art. 966(D)(1). The burden in on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or to prove that the mover is not entitled to judgment as a matter of law. Id.
In determining whether a genuine issue of material fact exists, we must consider the substantive law governing the litigation. The issue of the appropriate law to apply in this matter depends on the claims which Ms. Stone alleged in these proceedings. In her petition and in all arguments set forth in her opposition to the summary judgment motion presented to the trial court, Ms. Stone indicated her intent to pursue negligence claims against defendants.
Therefore, we first note that the threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. See Herrera v. United Fire & Cas. Co., 09-256 (La. App. 5 Cir. 10/27/09), 27 So.3d 919, 921, writ denied, 09-2578 (La. 2/5/10), 27 So.3d 303. Whether a duty is owed is a question of law for the court. Id. An owner or custodian owes a plaintiff a duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence. Alexander v. Parish of St. John the Baptist, 12-173 (La.App. 5 Cir. 10/16/12), 102 So.3d 904, 909, writ denied, 12-2448 (La. 1/11/13), 107 So.3d 617; Pitre v. Louisiana Tech Univ., 95-1466 (La. 5/10/96), 673 So.2d 585, 590.
Defendants argue that after the Lakes posted signs warning of the ice, the Lakes owed no further duty to warn or guard against ice on the stairwell during the storm. Defendants note that the Lakes posted a sign at the entrance of the stairwell warning tenants of the presence of ice and spread sand on the existing ice to protect its tenants’ safety. In response, Ms. Stone complains that no employees were on site to warn residents, clear stairs or monitor the safety of the buildings after noon on the day of the accident.
Applying the law outlined above in our de novo review, we find the trial court erred by failing to grant defendants’ motion for summary judgment with respect to Ms. Stone’s negligence claims because we find that under the rare and infrequent *1058 weather conditions at issue in this matter, the Lakes owed no further duty to its tenants after posting the signs warning of the icy conditions created by the ongoing weather.[2] Considering the size of the complex and the ongoing weather conditions, it would not be reasonable to find the Lakes had a duty, as Ms. Stone suggests, to post employees around the complex to continuously warn residents and clear stairwells during the storm. Furthermore, Ms. Stone admitted she was aware of the icy conditions caused by the weather, she saw ice in the |7parking lot and she saw the warning signs the Lakes posted at the stairwell entrance.
Therefore, we find that due to the rare weather conditions at issue in this matter, the Lakes did not owe a further duty to warn Ms. Stone of the ice after it posted warning signs or a duty to retain employees on site to continuously clear ice from the complex during the storm.
As we noted above, Ms. Stone also argues for the first time in her supplemental brief filed with this Court that defendants are also liable for her injuries pursuant to a theory of strict liability under La. C.C. Arts. 2696 and 2697.[3]
La. C.C. Art. 2696 provides:
The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.
La. C.C. Art. 2697 provides:
The warranty provided in the preceding Article also encompasses vices or defects that are not known to the lessor.
However, if the lessee knows of such vices or defects and fails to notify the lessor, the lessee’s recovery for breach of warranty may be reduced accordingly.
Under these provisions, the lessee need only prove a defect in the property in the custody of the landlord caused his or her injuries. Cennett v. Arceneaux, 12-706 (La. App. 5 Cir. 5/23/13), 119 So.3d 670, 673.
As a general rule, appellate courts will not consider issues raised for the first time on appeal, which are not pleaded in the court below and which the trial court has not addressed. Geiger v. State ex rel. Dept. of Health and Hosp., 01-2206 (La. 4/12/02), 815 So.2d 80, 86. However, while Ms. Stone’s petition does not specifically refer to a cause of action for strict liability under La. C.C. Arts. 2696 and 2697, we find Ms. Stone pled sufficient facts to allege such a claim.[4] In a *1059 de novo review, “the appellate court is at liberty to make an independent decision based on the record evidence.” Bujol v. Entergy Servs., Inc., 03-492 (La. 1/19/06), 922 So.2d 1113, 1144, fn. 1.
To prevail on a strict liability claim under La. C.C. Art. 2696, the plaintiff must prove 1) the defendant had custody of the thing causing the injury; 2) it contained a defect; and 3) the defect caused the plaintiffs injury. Wells v. Norris, 46,458 (La.App. 2 Cir. 8/10/11), 71 So.3d 1165, 1169, writ denied, 11-1949 (La. 11/18/11), 75 So.3d 465. Proof of a defect in the property is an essential element of liability. Martinez v. Coleman, 00-1827 (La.App. 5 Cir. 4/24/01), 786 So.2d 170, 173. For purposes of La. C.C. Art. 2696, a defect is defined as a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Id; Cennett, 119 So.3d at 673. The existence of a defect may not be inferred solely from the fact that an accident occurred. King, 185 So.3d at 840.
The relevant material facts in this matter are not disputed[5] and the only issue with respect to a potential claim under La. C.C. Arts. 2696 and 2697 is whether the 10ice on the stairwell constituted a defect— that is whether it constituted a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.
After considering the particular facts and circumstances at issue in this matter, we also find that ice on an exterior stairway during an ongoing ice storm was not a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Ms. Stone was well aware of the ongoing icy conditions caused by the storm, observed ice in the parking lot and observed the sign posted by the Lakes warning about ice on the stairway. No other resident in the 21 apartment complex buildings reported an accident as a result of the ice. Ms. Stone proceeded slowly and carefully through the parking lot, but did not hold onto the stairway railing until after she slipped.
Therefore, in addition to finding the Lakes did not owe any additional duties to Ms. Stone with respect to her negligence claims, we also find that based on the undisputed facts presented in this particular matter, ice on the exterior stairway during an ongoing ice storm did not constitute a defect which the Lakes warranted against pursuant to La. C.C. Arts. 2676.
DECREE
For these reasons, we grant defendants’ writ application, reverse the trial court’s ruling denying defendants’ motion for *1060 summary judgment and grant summary judgment in favor of defendants. We further dismiss plaintiff Gail Stone’s claims against defendants, Lakes of Chateau North, L.L.C. and Liberty Surplus Insurance Company, with prejudice.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED

. La. C.C. Art. 660 provides:
The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which cause the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. ■

. Other jurisdictions which experience these weather conditions on a more frequent basis have held a landowner does not have a duty to clear ice while a storm is in progress. See e.g, Battle v. George Washington Univ., 871 F.Supp. 1459, 1462-63 (D.D.C. 1994); Rockford v. G.K. Dev., Inc., 845 N.W.2d 715, 716-18 (Iowa Ct. App. 2014).

. This Court has recognized these provisions retain the traditional concept of strict liability. See Shubert v. Tonti Dev. Corp., 09-348 (La. App. 5 Cir. 12/29/09), 30 So.3d 977, 987, writ denied, 10-241 (La. 4/9/10), 31 So.3d 393. The strict liability imposed on a lessor was unaffected by the tort reform legislation that enacted La. C.C. Art. 2317.1 in 1996. King v. Allen Court Apts. II, 15-858 (La.App. 1 Cir. 12/23/15), 185 So.3d 835, 839, writ denied, 16-148 (La. 3/14/16), 189 So.3d 1069.

.“The Louisiana Code of Civil Procedure provides that no technical forms of pleading are required. La. C.C.P. Art. 854. Furthermore, La. C.C.P. Art. 862 sets forth as follows:
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
*1059 The purpose of this article is to suppress the “theory of the case” doctrine and permit a court to grant the relief warranted by allegations contained in the pleadings and the evidence. Pottinger v. New Orleans Heating & Cooling Specialists, Inc., 06-701 (La.App. 5 Cir. 1/30/07), 951 So.2d 1224, 1226. Thus, a party may be granted any relief to which he is entitled so long as the facts constituting the claim are alleged or proved. Greemon v. City of Bossier City, 10-2828 c/w 11-39 (La. 7/1/11), 65 So.3d 1263, 1268.

. Ms. Stone argued that a genuine issue of material fact exists as to whether a defective condition existed regarding the lighting in the stairway. While Ms. Stone alleged the stairwell was dimly lit, it is uncontroverted that the complex underwent a maintenance audit within six months prior to the accident and no defects or irregularities existed with respect to the stairwell lighting and there were no slip and fall accidents reported due to inadequate lighting for ten years prior to Ms. Stone’s fall. Ms. Stone did not complain about the stairwell lighting prior to the accident and did not notice any broken or malfunctioning lights. Considering all relevant uncontrovert-ed facts, if the lightening in the stairwell was dim, it was the same as any other evening.