JOHNSON, J.
Plaintiffs appeal the granting of summary judgment in favor of Defendants, dismissing their lawsuit with prejudice. For the following reasons, we reverse.
FACTS & PROCEDURAL HISTORY
In 2013, homeowners, Donald and Marilyn Lincoln, hired Defendant, Acadian Plumbing & Drain, LLC ("Acadian"), to perform plumbing work under the slab of their home at 1701 Disney Drive in Metairie. Specifically, Acadian was hired to tunnel beneath the house and replace the drain lines. Midday on September 3, 2013, approximately one to two weeks after Acadian began work, Mrs. Lincoln walked outside her home and fell into the hole that had been dug by Acadian to access the pipes under the house. Mr. Lincoln and his son, Donald Lincoln, Jr. ("Donald"), were inside the home when they heard screaming and rushed outside to find Mrs. Lincoln in the hole. They lifted her out of the hole, and she was taken by ambulance to the hospital with an injury to her left hip or leg, which required surgery.
In August 2014, Mrs. Lincoln and her son, Donald, filed suit for damages against Acadian and its insurer, Liberty Mutual Insurance Company, alleging Acadian was negligent in failing to sufficiently secure or barricade the hole and in failing to warn of the danger. The petition alleged that Mrs. Lincoln fell into a hole that "bordered the walkway leading to the front porch area" and that Acadian "placed a temporary border and/or barricade consisting of tape that did not border the hole in its entirety, specifically the area that bordered the walkway leading to the front porch area." The petition further alleged that Acadian covered the subject hole with "temporary plywood" that was "thin, worn, and/or rotten and did not cover its hole in its entirety" and that, as Mrs. Lincoln walked to the front porch of her residence, "suddenly and without warning, the plywood shifted, gave way, and broke into several pieces, thereby causing Mrs. Lincoln to fall into the hole."
Thereafter, on March 10, 2016, Mrs. Lincoln passed away, and Donald filed a motion to substitute parties-plaintiff seeking to substitute the Estate of Marilyn Lincoln, Mr. Lincoln and Becki Lincoln Zschiedrich (Mr. and Mrs. Lincoln's *208 daughter) in place of decedent. Additionally, Donald filed an amended and supplemental petition alleging that Mrs. Lincoln's death was the result of a stroke, caused by a blood clot that formed as a result of her leg injury sustained from her fall into the hole and the related subsequent surgery. The amended petition further asserted wrongful death claims on behalf of Mrs. Lincoln's surviving spouse and adult children.
On May 2, 2017, Acadian and its insurer filed a motion for summary judgment asserting that Plaintiffs could not prove Acadian breached any duty because the alleged defect was open and obvious to all and, thus, Acadian owed no duty. In support of the motion, Defendants attached the depositions of Mr. Lincoln and Donald in which they both testified that they all, including Mrs. Lincoln,[1] knew the hole was there, that the hole had a piece of plywood over it, and the hole was surrounded, to some extent, by caution tape. In his deposition, Donald testified that Acadian started digging the hole/tunnel at issue about one to two weeks prior to the accident. He stated that Acadian put a "rotten board" over the hole that touched, but did not overlap, the concrete. Donald stated that, after he helped his mother out of the hole, he observed a flimsy and rotten piece of plywood that had fallen into the hole after Mrs. Lincoln's fall. Donald testified that he believes Mrs. Lincoln stepped on the edge of the board, which shifted, causing her and the board to fall into the hole. Donald stated that he kept the piece of plywood and provided it to his attorney in connection with this litigation.
In further support of their motion, Defendants also attached a photograph of the hole showing a piece of plywood partially covering the hole, caution tape around the area, and a safety cone. The record does not establish who took the photograph or when it was taken.
Plaintiffs filed an opposition to the motion for summary judgment, arguing that Acadian placed an unsecured thin, weathered, and rotten piece of plywood over the hole, concealing the danger presented. Plaintiffs further asserted that Acadian's barricade, consisting of cones and caution tape, did not border the hole in its entirety and allowed access to the "rotten" plywood, which overlapped the sidewalk, thereby creating a "booby trap." Plaintiffs maintained that Acadian's failure to use proper materials and barricades created an unreasonable risk of harm that was not open and obvious. In support of its opposition, Plaintiffs attached portions of the depositions of Russell Tapie, the owner of Acadian, and Eric Syrdal, who is presumably an employee of Acadian; an affidavit from Ladd Ehlinger, a licensed architect, in which he states Acadian failed to provide a safe walking surface over the excavation as required by the International Residential Code in effect in Jefferson Parish; and photographs of the area at issue relied upon by Mr. Ehlinger.
After a hearing on the motion for summary judgment, which consisted of argument of counsel and the introduction of the exhibits attached to the memoranda in support of and opposition to the motion, the trial court granted summary judgment in favor of Defendants and dismissed Plaintiffs' petition with prejudice. In its ruling, the trial court stated that the alleged defect was open and obvious to all and that Acadian did not owe a duty to protect against it. Plaintiffs filed this appeal challenging the propriety of summary judgment.
LAW & ANALYSIS
On appeal, Plaintiffs assign as error the trial court's granting of summary judgment, *209 arguing that genuine issues of material fact exist as to whether the plywood used and the barricade erected around the hole dug by Acadian created an unreasonable risk of harm.
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Stone v. Lakes of Chateau North, LLC , 16-529 (La. App. 5 Cir. 12/14/16), 208 So.3d 1053, 1057, writ denied , 17-87 (La. 2/24/17), 216 So.3d 59. Summary judgment will be granted if the motion, memoranda, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Upton v. Rouse's Enterprise, LLC , 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, writ denied , 16-580 (La. 5/13/16), 191 So.3d 1057.
The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point to an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or to prove that the mover is not entitled to judgment as a matter of law. Stone , supra .
In determining whether a genuine issue of material fact exists, we must consider the substantive law governing the litigation. In this case, Acadian had custody of the work area consisting of the hole it dug for the purpose of accessing the pipes under the house in order to replace/repair them and the area immediately surrounding the hole. Thus, the legal basis for Acadian's liability for injuries sustained by an alleged defect of the work site is premised on La. C.C. arts. 2317 and 2317.1, which provide:
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
In determining whether liability exists under the facts of a particular case, courts apply a duty-risk analysis. Bufkin v. Felipe's La., LLC , 14-288 (La. 10/15/14), 171 So.3d 851, 855. Under this analysis, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard of care (duty element); (2) the defendant failed to conform his conduct to the appropriate standard of care (breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the *210 plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) damages. Id.
"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." Bufkin , supra at 855. A duty is imposed on "one doing construction work to properly label, mark, or barricade places in the construction site that present an unreasonable risk of harm to persons using the area." Taylor v. Entergy Corp. , 01-805 (La. App. 4 Cir. 4/17/02), 816 So.2d 933, 940 ; See also Dupree v. City of New Orleans , 99-3651 (La. 8/31/00), 765 So.2d 1002, 1013 ("It is the duty of one with custody or garde of a thing presenting an unreasonable risk of harm to properly and adequately label, mark, or barricade places in that site so as to provide adequate and reasonable warning to persons using the area.")
When evaluating the duty owed relative to the condition of a thing in one's custody, the facts and surrounding circumstances of each case control and the test applied requires consideration of whether the thing was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. Bufkin , 171 So.3d at 856. The custodian of a thing is only responsible for those injuries caused by a defect that presents an unreasonable risk of harm. Dupree , supra at 1012.
The question of whether a defect presents an unreasonable risk of harm is a mixed question of law and fact that is to be determined by the trier of fact. The inquiry is " 'a matter wed to the facts' and must be determined in light of facts and circumstance of each particular case." Broussard v. State, through Office of State Bldgs, Div. of Admin., 12-1238 (La. 4/5/13), 113 So.3d 175, 183.
To assist the fact-finder in determining whether the condition of a thing creates an unreasonable risk of harm, the Louisiana Supreme Court has adopted a risk-utility balancing test that weighs four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." Broussard, supra at 184.
The second factor of the risk-utility test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. Defendants generally have no duty to protect against an open and obvious hazard. Bufkin , 171 So.3d at 856. The obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained-of condition should be obvious to all who encounter it, then the condition may not be unreasonably dangerous, and the defendants may owe no duty to the plaintiff. Broussard, 113 So.3d at 184.
In this case, Acadian argues the hole was open and obvious and, thus, it had no duty to warn of the unreasonably dangerous condition of the hole. However, the issue is not whether the hole is unreasonably dangerous in and of itself because it is open and obvious, but rather whether the hole, covered with a thin, weathered piece of wood surrounded, in part, by caution tape, abutting the front sidewalk leading to Mrs. Lincoln's front door creates an unreasonable risk of harm to those walking in and out of the home.
Upon de novo review, we find genuine issues of material fact exist as to whether the manner in which Acadian barricaded and warned of the hole created an unreasonable *211 risk of harm. In support of its motion for summary judgment, Acadian relied on the depositions of Mr. Lincoln and Donald and a photograph depicting the work site. Both Mr. Lincoln and Donald testified that they, as well as Mrs. Lincoln, were aware of the hole in the front yard. Additionally, both stated the hole was covered with a piece of plywood when the workers were not working, and that caution tape was tied to a PVC pipe around the hole; however, Donald stated the plywood was rotten and the caution tape did not fully surround the hole, leaving access to the hole.
While the photograph is illustrative in the way it depicts the work site regarding the location of the hole and the existence of caution tape and a piece of wood, it is not dispositive as to the condition of the work site at the time of Mrs. Lincoln's accident because it is unclear who took the photograph or when it was taken. Neither Mr. Lincoln nor Donald recalled the safety cone that is depicted in the photograph. Further, Donald testified he never saw the plywood overlapping the sidewalk as it does in the photo.
In opposition to Acadian's motion for summary judgment, Plaintiffs presented the deposition testimony of Russell Tapie, the owner of Acadian, and Eric Syrdal. Mr. Tapie testified regarding the measures Acadian uses to prevent people from entering a work site. He explained the excavation is covered with plywood and caution tape is used to surround the entire area so "nobody can get in." As previously noted, Donald testified that the caution tape did not fully encircle the hole. Mr. Tapie also noted that barricades are used in some cases, but that a pipe or multiple pipes are used when they are unable to use a barricade. During his testimony, there appeared to be a dispute as whether the piece of plywood retained by Plaintiffs after the accident and purported to be the plywood covering the hole at the time of Mrs. Lincoln's accident was provided or used by Acadian prior to the accident. In particular, Mr. Tapie noted that he never purchased quarter-inch or three-eighths-inch plywood and that Acadian would have used a full 4x8 sheet of wood. Donald testified the piece of wood he recovered immediately after his mother's accident was rotten and very thin.
Mr. Syrdal's[2] deposition testimony addressed how he would have barricaded a work site. He explained caution tape is wrapped around poles to secure a perimeter around the hole and noted there would be about a one-foot buffer zone between the caution tape and the actual hole. He further explained that a whole 4x8 piece of plywood is not always used to cover the excavation, but that the plywood used is generally no smaller than a 4x4 section. Based on Mr. Tapie and Mr. Syrdal's testimony, there is an issue of whether Acadian followed its own policies in securing the work site.
Plaintiffs also presented the affidavit of Ladd Ehlinger, a licensed architect, who attested as to various safety standards for buildings and premises, including walkways. He stated that these standards dictate that coverings for an excavated hole must be capable of supporting at least twice the weight of a person walking over it, must be stable and unable to slip, and should be flush with exterior walkways. Mr. Ehlinger opined that Acadian's work site failed to comply with the required *212 standards thereby creating a hazardous condition.
Based on the evidence presented, we find genuine issues of material fact as to whether the barricade erected or the manner in which the area was secured by Acadian created an unreasonable risk of harm; thus, we find summary judgment is precluded. We find this case distinguishable from Allen v. Lockwood , 14-1724 (La. 2/13/15), 156 So.3d 650, and Helwig v. H.P.B. Inc. , 15-389 (La. App. 5 Cir. 12/23/15), 182 So.3d 1169, which Acadian relies upon to support the granting of summary judgment, in that unlike Allen and Helwig , Plaintiffs in this case presented factual support for their claim that the manner in which the excavated hole was secured presented an unreasonable risk of harm.
In reversing the trial court's granting of summary judgment, we in no way express any opinion regarding the merits of Plaintiffs' claims. We simply conclude that Plaintiffs have presented factual support for their claim that the condition of the work site presented an unreasonable risk of harm so as to create genuine issues of material fact.
DECREE
For the foregoing reasons, we reverse the trial court's granting of summary judgment in favor of Acadian Plumbing & Drain, LLC and dismissing of Plaintiffs' petition, and remand the matter for further proceedings.
REVERSED

It is noted that Mrs. Lincoln died before her deposition was taken.

We note that since only portions of Mr. Syrdal's deposition were admitted into evidence, it is unknown who Mr. Syrdal is; however, based on the nature of his testimony, we surmise he is an employee of Acadian.