LAMAR CONTRACTORS, LLC

VERSUS

SRF GROUP CONSULTING, LLC

NO. 22-CA-212

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 36,600, DIVISION "E"
HONORABLE ALVIN TURNER, JR., JUDGE PRESIDING

February 01, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**REVERSED; REMANDED**

> **JJM**
> **RAC**
> **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
LAMAR CONTRACTORS, LLC
    Steven B. Loeb
    Jacob E. Roussel

COUNSEL FOR DEFENDANT/APPELLANT,
ST. JAMES PARISH
    Victor J. Franckiewicz, Jr.

**MOLAISON, J.**

The appellant, St. James Parish, seeks review of the trial court's granting of a partial summary judgment which struck several of its reconventional demands brought against the appellee, Lamar Contractors, L.L.C. For the reasons that follow, the trial court's ruling that granted Lamar's motion for summary judgment on the issue of the Parish's reconventional demands is reversed.

## FACTS AND PROCEDURAL HISTORY

The basis of the underlying lawsuit pertains to the construction of a public recreation building ("the building")[1] owned by, and located within, St. James Parish ("the Parish"). On July 30, 2013, the Parish entered into a written contract[2] with Lamar Contractors, L.L.C. ("Lamar") to serve as the general contractor for the project and to construct the building, which was designed by SRF Group Consulting, L.L.C. ("SRF"). Following a dispute over the design and specifications for the roof decking, Lamar stopped work on the project. On July 15, 2015, pursuant to the general contract between the parties, Lamar filed a required "Notice of Termination." Lamar then filed the underlying lawsuit, which later named the Parish in an amended petition.[3] The Parish filed a reconventional demand against Lamar on January 19, 2016, alleging that Lamar had performed defective work and had breached the general contract in unilaterally deciding to stop work on the building.

Lamar's motion for a partial summary judgment on the Parish's reconventional demands was held on December 6, 2021. In its judgment dated December 22, 2021, the trial court granted Lamar's motion for partial summary

---

[1] The record shows that the official name of the project was "St. James Parish District 5 Multi-Purpose Recreation Building Welcome Park."
[2] The contract used a pre-drafted form with the designation of "Document A101-2007."
[3] Lamar's original petition and its amended petition have not been made part of the designated record on appeal.

judgment as to the Parish's claims for "defective work" as "asserted in Paragraph 36, Subparts (a) through (aa) of the Reconventional Demand," and "reasserted in Paragraph 36, Subparts (a) through (z) and (bb) of the Amended Reconventional Demand." The judgment also dismissed the Parish's claim against Lamar for "stopping work and walking off the job." This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, the Parish assigns two errors:

1. The trial court committed legal error in misconstruing the construction contract and applying the Article 15 claims procedure to the Parish's reconventional demand without considering that article in context, and without applying the provisions of the contract as a whole.

2. The trial court committed legal error by granting summary judgment when material facts remain in dispute.

## LAW AND ANALYSIS

### *Standard of review*

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Vill. Shopping Ctr. P'ship v. Kimble Dev., L.L.C.*, 18-740 (La. App. 5 Cir. 4/24/19), 271 So.3d 376, 381; *Lincoln v. Acadian Plumbing & Drain, LLC*, 17-684 (La. App. 5 Cir. 5/16/18), 247 So.3d 205, 209, *writ denied*, 18-1074 (La. 10/15/18), 253 So.3d 1302. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and is favored and designed to secure the just, speedy, and inexpensive determination of every action. *Id.* A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. If only one conclusion could be reached by reasonable persons, summary judgment is appropriate, as there is no need for a trial on that issue. *Id.*

*First assignment of error*

In its motion for partial summary judgment, Lamar argued that the Parish failed to preserve its reconventional claims in the manner mandated by the contract under Article 15.[4] The relevant provisions that Lamar relied upon state:

> § 15.1.1 DEFINITION
>
> .   .   .
>
> A Claim is a written demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim. Claims must be initiated by written notice. Verbal communications shall not constitute claims.
>
> § 15.1.2 NOTICE OF CLAIMS
>
> .   .   .
>
> Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

In its first assignment of error, the Parish contends that the trial court erred in finding that a failure to follow the procedures in Article 15 of the contract served as a bar to its reconventional demands.

The interpretation of a contract's provisions is typically a matter of law that may properly be decided on a motion for summary judgment. *Hall v. Malone*, 12-0264 (La. App. 4 Cir. 11/7/12), 104 So.3d 593, 596. In analyzing contracts, certain fundamental legal principles apply. According to the rules of construction, the

---

[4] The only specific examples provided in the contract which pertain to notice are: 15.1.4- Claims for additional cost, and; 15.1.5- Claims for additional time.

responsibility of the judiciary in interpreting contracts is to determine the parties' common intent. *See*, La. C.C. art. 2045. Courts begin their analysis of the parties' common intent by examining the words of the contract itself. *See*, La. C.C. art. 2046. In ascertaining the common intent, words and phrases in a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See*, La. C.C. art. 2047.

A contract is to be construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See*, La. C.C. art. 2050. Neither should a contract be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Edwards v. Daugherty*, 03-2103 (La. 10/1/04), 883 So.2d 932, 941. Courts lack the authority to alter the terms of contracts under the guise of contractual interpretation when its provisions are couched in unambiguous terms. *Cadwallader v. Allstate Insurance Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577, 580. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. *Edwards*, 883 So.2d at 941.

### Lamar's obligations created in the July 30, 2013 contract

It is clear from the contract that Lamar's overall obligation was to supply any work, labor and materials required to produce a "functionally complete project."[5] To further this goal, the contract outlines a process for identifying

---

[5] Contract, Article 1, section 1.2.

unsatisfactory work, through the use of a "punch list."[6] The contract states that the "Architect" is responsible for preparing a punch list to deliver to the owner, which in this case is the Parish.[7] Identification of items on the punch list are not identified as "claims" in the contract. The final payment to Lamar, as the contractor, is conditioned upon its obligation to correct work under 12.2.2.[8] A one year period for correction of work is provided to Lamar. [9] The contact provides that the Parish could terminate the contract if Lamar fails to timely complete the punch list.[10] Finally, section 3.20 contract states, in part, that "[t]he Contractor shall be liable to the Owner for all costs and/or damages that the Owner incurs as result of the Contractor's failure to perform the Work…"

The contract is clear on its face that the Parish has the right to redress in the event that Lamar's work is deemed unsatisfactory, through the process described above. The contract also states that a failure by the Parish to use that process does not result in a waiver of those claims. As provided in section 13.4.2, "[N]o action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing." This would specifically apply to Lamar's claim that the Parish waived its right to recover for a defect in Lamar's workmanship. We would reach this same conclusion even if we were to find 15.1.2 applicable, as argued by Lamar. That section also does not specifically state that the Parish waives legal recourse otherwise provided under the contract[11] by failing to give notice.

---

[6] Contract, Article 3, section 3.4. The term "punch list" is not defined in the contract. In common usage, we understand the term to mean "[l]ists of jobs that have not been completed by a contractor before he is due to be paid," as defined in the Black Law Dictionary 2nd Ed.

[7] Contract, Article 5, section 5.1.8.

[8] Contract, Article 5, section 5.2.1.

[9] Contract, Article 12, section 12.2.2.

[10] Contract, Article 14, section 14.2.1.

[11] Contract, Section 3.20 correlates to La. C.C. art. 2769, which states:

### *The Parish's obligation after Lamar's termination of the contract*

The notice and remediation procedures detailed in the contract are logical in the context of a continuing construction project. The next question is what, if any, obligation the Parish had to report defects to Lamar once the contract was terminated.

When Lamar terminated or ended the project, it also ended any obligations the Parish had except those which were provided for in the contract, which was to pay Lamar "for Work properly executed, including reasonable overhead and profit on that portion of the Work properly executed, installed, performed or completed." The alleged defects are relevant, however, to show the Parish's entitlement to a potential offset for the remaining payment left to Lamar after its termination of the contract. The Parish's only recourse at that time was to assert these claims in district court, as per the Binding Dispute Resolution clause of 6.2.[12]

The Parish's reconventional demands are also permissible under La. C.C.P. art. 424, which states:

> A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
> Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.

Under this article, Louisiana courts have allowed reconventional demands to stand, even when they otherwise would have been prescribed, as long as they are incidental to, and directly connected with the obligation sought to be enforced.

---

If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.

[12] Contract, Article 6, section 6.2 provides that an optional mediation between the parties is a precursor to litigation. In its brief, the Parish asserts that prior to the filing of its reconventional demand, all parties to Lamar's lawsuit went through mediation and even sought the appointment of a special master to assist in re-starting construction.

*Dixie Bldg. Materials Co., Inc. v. Bob L. Whittington & Associates, Inc.*, 588 So.2d 78 (La.1991); *Hennessey Const. Corp. v. Halpern*, 06-1099 (La. App. 4 Cir. 1/31/07), 952 So.2d 739, 741. In the instant case, because Lamar's main demand pertains to the construction of a building, we find the Parish's reconventional demands regarding defects in the work to be connected.

In conclusion, upon *de novo* review, and construing the contract as a whole, we find that the trial court erred as a matter of law in finding that Article 15 could be used to preclude the Parish's reconventional demand. We reverse the trial court's granting of Lamar's motion for summary judgment. As noted above, even if the Parish's claims for damages were prescribed, La. C.C.P. art. 424 allows them to use these claims as a reconventional demand.

Because we have granted relief on the Parish's first assignment of error, we pretermit discussion on its second assignment as moot.

## CONCLUSION

For the foregoing reasons, the trial court's ruling that granted Lamar's motion for summary judgment on the issue of the Parish's reconventional demands is reversed. This matter is remanded for further proceedings consistent with this opinion.

**REVERSED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-212

**E-NOTIFIED**
23RD JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ALVIN TURNER, JR. (DISTRICT JUDGE)
STEVEN B. LOEB (APPELLEE)        VICTOR J. FRANCKIEWICZ, JR.        ELLIOT W. SCHARFENBERG (APPELLEE)
                                 (APPELLANT)

**MAILED**
DARREN A. PATIN (APPELLEE)        KEITH J. BERGERON (APPELLEE)        JACOB E. ROUSSEL (APPELLEE)
ATTORNEY AT LAW                   TERRENCE L. BRENNAN (APPELLEE)      ATTORNEY AT LAW
3445 NORTH CAUSEWAY BOULEVARD     ATTORNEYS AT LAW                    POST OFFICE BOX 3197
SUITE 800                         755 MAGAZINE STREET                 BATON ROUGE, LA 70821
METAIRIE, LA 70002                NEW ORLEANS, LA 70130